## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **DAVID BARRETT**, | Case No. 3:14-cv-02016-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **KAISER FOUNDATION HEALTH PLAN OF THE NORTHWEST d/b/a KAISER PERMANENTE**, | |
| Defendant. | |

William J. Macke, WILLIAM J. MACKE & ASSOCIATES, 4411 NE Tillamook Street, Portland, OR 97213. Of Attorneys for Plaintiff.

Laura E. Rosenbaum and Edward A. Piper, STOEL RIVES LLP, 900 SW Fifth Avenue, Suite 2600, Portland, OR 97204. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Plaintiff David Barrett ("Barrett") brings this action against Kaiser Foundation Health Plan of the Northwest ("Kaiser"). Barrett alleges that Kaiser, Barrett's former employer, discriminated against him because of his race. Before the Court is Kaiser's Motion to Dismiss Barrett's Second Amended Complaint. Dkt. 18. For the reasons that follow, Kaiser's motion is denied.

PAGE 1 – OPINION AND ORDER

**STANDARDS**

A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). All reasonable inferences from the factual allegations must be drawn in favor of the plaintiff. *Newcal Indus. v. Ikon Office Solution*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The court need not, however, credit the plainitff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

## BACKGROUND

Barrett is African American. He was formerly employed by Kaiser as a courier. On November 1, 2012, Barrett performed a specimen pickup at a laboratory at Oregon Health Science University ("OHSU"). After this pickup, an OHSU employee complained that Barrett had behaved unprofessionally. The employee complained that Barrett commented that if the employee performed splits naked, her "man" would like it. Another OHSU employee stated that Barrett was not threatening but appeared to be "saucy."

On December 3, 2012, Barrett had a meeting with his supervisor Thomas Lear and a human resources officer, Nate Taylor, about the incident at OHSU.  In a letter issued that same day, Barrett denied having made the comment about doing the splits naked, but admitted that he was doing splits as a stretching exercise to help his back pain. He stated that if his doing the splits had offended anyone, he would do them in private in the future.

On January 23, 2013, Kaiser disciplined Barrett for the incident with a level four corrective action form for "Comments and/or actions that were inappropriate towards another party creating a hostile environment." Later that day, Barrett met with attorneys for Kaiser to discuss a different topic, whether Barrett believed that an African American former employee, Duane Johnson, had been treated differently by Kaiser because of his race. Barrett stated that he believed Mr. Johnson had been treated differently.

On January 31, 2013, Kaiser disciplined Barrett with a level four corrective action form for generalized performance concerns and placed Mr. Barrett on "last chance" status. On May 20, 2013, Kaiser performed a follow-up review on Barrett. The level four corrective action form was continued and Barrett again was placed on "last chance" status.

Barrett was out on medical leave from August 16, 2013 to September 10, 2013. On September 19, 2013, Mr. Lear and Mr. Taylor placed Barrett on administrative leave for alleged

PAGE 3 – OPINION AND ORDER

violations of his last chance agreement. On September 22, 2013, Barrett again went on medical leave, which included surgery and was anticipated to last until January 14, 2014.

On November 23, 2013, Kaiser informed Barrett that his 90 days of medical leave with job protection had expired and that Kaiser could post and fill Barrett's job. On December 13, 2013, Barrett met with Mr. Lear and Mr. Taylor and signed a resignation agreement. On December 18, 2013, Barrett rescinded the separation agreement and Kaiser changed Barrett's status to terminated.

Barrett asserts that he was scrutinized in such a way that other non-African American employees were not. Barrett alleges that he was disciplined for "[g]oing to places not work related outside lunch time," "improper behavior (horseplay, doing splits, punching/kicking of walls, doors, vehicles, and the air)," and "exercising in common areas." Barrett further alleges that although he substantially complied with all of Kaiser's requirements, Mr. Taylor and Mr. Lear continued to change the basis of Barrett's discipline to keep him on last chance status. Mr. Taylor and Mr. Lear allegedly incorporated cell phone data to show that Barrett was off route in order to place him on administrative leave on September 19, 2013.

Barrett alleges treatment of two other employees in order to present evidence of Kaiser's alleged discriminatory animus. First, Barrett identifies Mark Bennett as a similarly situated non-African American employee who was treated more favorably than Barrett under similar but more egregious circumstances. Barrett alleges that Mr. Bennett was given full discovery interviews before moving to a level four corrective action plan, despite the fact that the findings against Mr. Bennett were for sexual harassment, whereas Barrett was not given such interviews even though the findings against him involved only "unprofessional behavior." Additionally, Barrett alleges that Mr. Bennett was not terminated, while Barrett eventually was.

PAGE 4 – OPINION AND ORDER

Second, Barrett identifies another African American employee, Mr. Johnson, who was allegedly treated unfavorably because of his race. Barrett alleges that Kaiser was skipping over Mr. Johnson and giving overtime shifts to less senior employees. When Mr. Johnson complained, he was referred to as "boy" by Mr. Lear, a much younger supervisor. Barrett's only involvement in this incident was the fact that he mediated the dispute as the shop steward.

On June 9, 2014, Barrett filed a complaint with the Oregon Bureau of Labor and Industries ("BOLI"), alleging age and race discrimination by Kaiser. Barrett filed his Complaint in this case on December 17, 2014, and filed his Amended Complaint on February 5, 2015, alleging claims for: (1) race discrimination under Title VII of the Civil Rights Act of 1964, codified at 42 U.S.C. § 2000e, *et seq.*; (2) state disability discrimination under Or. Rev. Stat. § 659A.112; and (3) age discrimination under the Age Discrimination in Employment Act, codified at 29 U.S.C. § 621, *et seq.* This Court dismissed all claims on April 1, 2015. Dkt. 16. On April 8, 2015, Barrett filed his Second Amended Complaint (Dkt. 17), alleging one claim of race discrimination. Kaiser now moves to dismiss Barrett's Second Amended Complaint.

## DISCUSSION

Kaiser argues that Barrett's race discrimination claim is time barred and that, even if timely, Barrett fails to state a claim for race discrimination.

### 1. Timeliness

Barrett filed his BOLI complaint on June 9, 2014. Under Title VII, a plaintiff must file his state agency complaint within 300 days from the alleged discriminatory act. Thus, Barrett may only bring a claim based on discrete discriminatory acts occurring on or after August 13, 2013. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). A discrete discriminatory act consists of conduct that "occurred" on the day it "happened," which includes, for example, "termination, failure to promote, denial of transfer, or refusal to hire." *Id.* at 114.

For discrete discriminatory acts, "[e]ach incident of discrimination . . constitutes a separate actionable 'unlawful employment practice.'" *Id.*, 536 U.S. at 114. Incidents occurring outside of the limitations period are not actionable, but evidence of those incidents may be admitted as relevant background evidence to support a related timely claim. *Id.* at 113; *see also Lucke v. Multnomah Cnty.*, 2008 WL 4372882, at *23 (D. Or. Sept. 22, 2008) *aff'd in part*, 365 F. App'x 793 (9th Cir. 2010) ("while time-barred acts may not be considered for purposes of liability, evidence of time-barred acts may be considered to prove timely claims").

Here, Barrett alleges discrete allegedly discriminatory acts that occurred within the limitations period—being placed on administrative leave on September 19, 2013, being informed that his job was no longer protected on November 23, 2013, being forced to resign on December 13, 2013, and being terminated on December 18, 2013. These are discrete incidents that may each constitute an actionable unlawful employment practice, even if they are related to actions that occurred outside the limitations period, such as Barrett's discipline in January and May, 2013. *Morgan*, 536 U.S. at 113-14. Thus, Barrett has asserted a timely claim for race discrimination. Further, Barrett may rely on the earlier alleged conduct and incidents as evidence of Kaiser's alleged racial animus.

### 2.  Sufficiency of the Allegations

Title VII prohibits employment discrimination on the basis of a protected status. An unlawful employment practice is established by showing that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice. 42 U.S.C. § 2000e–2(m), as amended by the Civil Rights Act of 1991; *Nguyen v. Qualcomm, Inc.*, 501 F. App'x 691, 693 (9th Cir. 2012). "Disparate treatment occurs 'where an employer has treated a particular person less favorably than others because of a protected trait.'" *Wood v. City of San Diego*, 678 F.3d 1075, 1081 (9th Cir. 2012) (quoting *Ricci*

*v. DeStefano*, 557 U.S. 557, 577 (2009)). The "central element" of a disparate treatment claim is "discriminatory intent." *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618, 624 (2007). Thus, a plaintiff alleging disparate treatment "must establish that the defendant had a discriminatory intent or motive for taking a job-related action." *Wood*, 678 F.3d at 1081 (quoting *Ricci*, 557 U.S. at 577). This requires more than showing an employer was aware that its actions might have adverse consequences on the protected person. *See Wood*, 678 F.3d at 1081.

Barrett has alleged facts sufficient to plausibly infer racial animus by Kaiser. Much of Barrett's allegations involve his supervisor Mr. Lear. Barrett alleges that Mr. Lear referred to Mr. Johnson, another African American employee, who was much older than Mr. Lear, as "boy." This comment was allegedly made after Mr. Johnson complained that Mr. Lear was not giving Mr. Johnson overtime shifts and was giving those shifts to less senior employees. The use of the word "boy" is sometimes racially discriminatory. *See Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 456 (2006) (holding that evidence the plant manager sometimes had referred to African American employees as "boy" was potentially probative of discriminatory animus depending on the context).

Barrett also alleges that a non-African American employee, Mr. Bennett, engaged in more egregious misconduct than Barrett's purported misconduct but was treated more favorably than Barrett. Kaiser argues that Barrett does not sufficiently allege that Mr. Bennett is similarly situated "in all material respects" to Barrett. That is not the pleading standard. Barrett need only allege sufficient facts to plausibly infer that he was treated differently. *See Johnson v. Riverside Healthcare System, L.P.*, 534 F.3d 1116, 1122 (9th Cir. 2008) ("At the motion to dismiss stage, [plaintiff] need not support his allegations with evidence, but his complaint must allege sufficient facts to state the elements of a [Title VII] claim."); *Al-Raheem v. Covenant Care*, 2012

WL 4863711, at *4 (E.D. Cal. Oct. 12, 2012) (a successful claim must allow the court to reason that "the employer has taken an adverse employment action against the plaintiff that is more extreme, harsh, unreasonable or otherwise disadvantageous than actions taken toward non-African-Americans"). Plaintiff has alleged facts that, if proven, would satisfy the element of similarly situated employees being treated differently. Further, as the Second Circuit has held, "whether two employees are similarly situated . . . presents a question of fact, rather than a legal question to be resolved on a motion to dismiss." *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 230 (2d Cir. 2014) (quotation marks omitted).

## CONCLUSION

Kaiser's motion to dismiss (Dkt. 18) is DENIED.

**IT IS SO ORDERED**.

DATED this 30th day of July, 2015.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge